UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HAN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>SYNERGY HOMECARE FRANCHISING, LLC,<br><br>        Defendant. | Case No. 16-cv-03759-KAW<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**<br><br>Re: Dkt. No. 14 |

On August 17, 2016, Plaintiffs John Han, Alice Lai-Bitker, and Veris Eastbay Homecare, Inc. filed a motion to remand the case to state court.

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES Plaintiffs' motion to remand.

## I. BACKGROUND

On June 3, 2016, Plaintiffs John Han, Alice Lai-Bitker, and Veris Eastbay Homecare, Inc. filed a suit for declaratory relief on a written contract against Defendant Synergy Homecare Franchising, LLC. Plaintiffs seek declarations that paragraphs 7.4, 7.5, 7.6, 17.2, and 21.2 of the Franchise Agreement are "invalid, and/or void, and/or unenforceable." (Compl., Dkt. No. 1-1 at 12-13). Plaintiffs also seek a declaration that "client and caregiver information is trade secret information of Plaintiff[s] and should be stricken from the definition of Confidential Information as defined in the Franchise Agreement." (Compl. at 12). Finally, Plaintiffs seek a declaration that the Franchise Agreement "is invalid, and/or void and/or unenforceable in its entirety" and seek recovery of their attorney's fees and costs. (Compl. at 13.)

On July 5, 2016, Defendant removed the case to federal court based on diversity

jurisdiction. On July 12, 2016, Defendant filed a motion to dismiss the complaint and compel arbitration. (Dkt. No. 8.) On August 17, 2016, Plaintiffs filed the instant motion to remand. (Dkt. No. 14.) As a result, the undersigned continued the hearing on the motion to dismiss on the grounds that subject matter jurisdiction is a threshold issue. On August 31, 2016, Defendant filed an opposition. (Def.'s Opp'n, Dkt. No. 19.) On September 7, 2016, Plaintiffs filed a reply. (Pls.' Reply, Dkt. No. 20.) On September 12, 2016, Defendant filed an objection to evidence filed in support of Plaintiffs' reply. (Def.'s Obj., Dkt. No. 22.)

## II.   LEGAL STANDARD

### A.   Removal

Federal courts exercise limited jurisdiction. A "federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). A defendant may remove a civil action from state court to federal court if original jurisdiction would have existed at the time the complaint was filed. *See* 28 U.S.C. § 1441(a). "[R]emoval statutes are strictly construed against removal." *Luther v. Countrywide Homes Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," such that courts must resolve all doubts as to removability in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The burden of establishing that federal jurisdiction exists is on the party seeking removal. *See id.* at 566-67.

Federal district courts have original jurisdiction over actions that present a federal question or those based on diversity jurisdiction. *See Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 & n.2 (9th Cir. 2002). Federal district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. District courts also have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). "[A] case may not be removed to federal court on the basis of a federal defense . . . , even if the defense is anticipated in the plaintiff's complaint . . . ." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citation omitted).

### B. Request for Judicial Notice

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a motion. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993). "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. DISCUSSION

### A. Request for Judicial Notice

As a preliminary matter, Plaintiffs ask that the Court take judicial notice of four documents in support of its motion to remand: 1) letter to Synergy HomeCare Franchising, dated July 17, 2015, from the California Department of Business Oversight; 2) Order Effectiveness of Registration, dated July 17, 2015, from the California Department of Business Oversight; 3) "Fact Sheet: The Home Care Services Consumer Act," dated January 2015, published by the California Department of Social Services; and 4) "Frequently Asked Questions: Home Care Services Consumer Protection Act," published by the California Department of Social Services online and accessed on August 16, 2016. (Pls.' Req. for Judicial Not., "RJN," Ex. 1 Dkt. No. 14-2.)

Exhibits 1 through 4 are true and correct copies of official public records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b).

Accordingly, the Court GRANTS Plaintiffs' request for judicial notice.

///

### B. Motion to Remand

There is no dispute that there is complete diversity of citizenship between the parties. Rather, Plaintiffs contend that Defendant has not satisfied the amount in controversy requirement. Thus, the only issue to resolve is whether Defendant, as the removing party, has met its burden of establishing that the amount in controversy exceeds $75,000.

#### i. Whether the arbitration amount is the amount in controversy

Plaintiffs argue that Defendant set the amount in controversy at when it initiated arbitration proceedings on July 1, 2016 for a claim amount of $12,000.00. (Pls.' Mot. at 3-4; Decl. of Philip Milestone, "Milestone Decl.," Dkt. No. 14-1 ¶ 4, Ex. Y.) The arbitration claim concerns "Paragraph 17.5 of the Franchise Agreement[, which] grants Claimant the option to purchase any or all of the assets of the franchised business for those assets' book values, not including goodwill and less than all amounts owed to Claimant." (Arbitration Claim, Milestone Decl., Ex. Y at 1.)

In opposition, Defendant contends that the arbitration proceeding asserts damages owed under different legal theories than the relief sought by Plaintiffs in this lawsuit. (Def.'s Opp'n. at 13). Defendant filed the arbitration proceeding to enforce its right to exercise the option to purchase the assets of the franchised business under Paragraph 17.5 of the Franchise Agreement, which Plaintiffs have allegedly breached by refusing to cooperate. *Id.* at 14. While here, Plaintiffs seek a determination of whether they can avoid complying with their obligations pursuant to the non-compete terms in the Franchise Agreement. *Id*. at 13.

Plaintiffs cite *Circuit City Stores v. McLemore*, 2001 WL 1705659 (N.D. Cal. Dec. 4, 2001), in support of their argument that the amount of the arbitration claim determines the amount in controversy. This reliance is misplaced. In *Circuit City*, the Plaintiff filed a complaint in state court against Defendant Circuit City alleging seven causes of action pertaining to sexual harassment. Circuit City filed a petition to compel arbitration and to dismiss or stay the lawsuit pending arbitration. *Id.* at 1. In considering diversity of citizenship and amount in controversy, the district court concluded that, since (1) "the only issue to be resolved in arbitration is Circuit City's potential liability based on [the plaintiff]'s allegations, . . . the amount of the potential award in arbitration is the relevant amount in controversy." *Id.* at 4.

4

1  Here, however, the arbitration initiated by Defendant is unrelated to the claims asserted by
2  Plaintiffs in the instant case. The claims asserted by Defendant are related to the alleged violation
3  of Section 17.5 of the Franchise Agreement and do not relate to the alleged invalidity of the
4  contract terms specified by Plaintiffs. Thus, the Defendant contends that pending arbitration has
5  no bearing on the amount in controversy in this case. The Court agrees.

Moreover, Plaintiffs' argument that the arbitration was "the only arbitration that was ongoing" when Defendant removed this lawsuit to federal court and sought to compel arbitration of the claims in the instant case is unavailing, and Plaintiffs fail to cite any legal authority that an ongoing arbitration pertaining to different claims is relevant to determining the amount in controversy. (*See* Pls.' Mot. at 4.) Furthermore, the pending arbitration concerns a claims amount for Defendant's alleged damages, and does not provide any valuation for any damages Plaintiffs may have sustained in relation to the Franchise Agreement.

Accordingly, the undersigned finds that the pending arbitration has no bearing on the amount in controversy of Plaintiffs' claims in the instant action.

### ii. Whether Defendant may aggregate Plaintiffs' claims to meet the jurisdictional threshold

a. Aggregation

Plaintiffs contend that their claims cannot be aggregated, because they are separate and distinct. (Pls.' Mot. at 5.) When claims are separate and distinct, each plaintiff's claims must meet the amount in controversy. *Pinel v. Pinel,* 240 U.S. 594, 596 (1916). When claims are derived from rights that plaintiffs hold in group status, they are common and undivided. *Eagle v. AT&T,* 769 F.2d 541, 545 (9th Cir. 1985).

Defendant argues that the Court may aggregate the value of the Plaintiffs' claims to satisfy the threshold amount. Defendant cites *Eagle*, in which the court aggregated the individual claims of minority shareholders, because they were found to share a common and undivided claim, such that the amount in controversy was the total value of all of the claims. 769 F.2d at 545.

Plaintiffs contend that Defendant cannot aggregate their claims to meet the jurisdictional threshold because its reasoning is "not supported by the authorities it cites." (Pls.' Mot. at 9).

5

Plaintiffs rely on cases such as *Phipps v. Praxair, Inc.*, 1999 WL 1095331, at *3 (S.D. Cal. Nov. 12, 1999), to support the proposition that their claims are separate and distinct. (Pls.' Mot. at 5-7.) *Phipps*, however, is inapposite, as the court found that the claims were separate and distinct because each named plaintiff was an individual customer of Defendant's gas products, and was, therefore, individually harmed by the allegedly fraudulent activities. *Phipps*, 1999 WL 1095331, at *3. In that case, the plaintiffs could have brought separate actions to recoup the fees and charges paid. *Id.*

The authority Defendant cites supporting aggregation is instructive. Here, Plaintiffs' seven causes of action arise from provisions of the same Franchise Agreement, which Plaintiff Han and Plaintiff Lai-Baker agreed to "jointly and severally, unconditionally and irrevocably agree to assume and perform when and as due each and all of Assignor's duties and obligations under the Franchise Agreement and all other agreements reference therein or related thereto." (Compl., Ex. B, ¶ 2). Despite their protestations to the contrary, Plaintiffs' claim that being individually bound by the Franchise Agreement means that they have separate and distinct claims is incorrect. Unlike the plaintiffs in *Phipps*, who were seeking damages on behalf of themselves as individual customers, Plaintiffs obligations under the Franchise Agreement are joint and several, which means that they derive from group status. *Phipps*, 1999 WL 1095331, at *3 (quoting *Eagle v. Am. Tel. and Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985)(citing *Potrero Hill Community Action Comm. v. Housing Auth.*, 410 F.2d 974, 978 (9th Cir. 1969)).

Accordingly, Plaintiffs have a common and undivided interest in any claims arising from the Franchise Agreement and their claims can be aggregated.

    b. <u>Valuation</u>

Defendant contends that the claims can be valued based on the potential revenue or income of the parties. (Def.'s Opp'n. at 2). Specifically, and on the lower end, Defendant's value of the non-compete clause satisfies the minimum jurisdictional amount. (Def.'s Opp'n. at 7).

Defendant utilizes the Ninth Circuit's "'either viewpoint' rule to assess the amount in controversy when determining jurisdiction." *Pagel v. Dairy Farmers of Am., Inc.,* 986 F. Supp.2d 1151, 1158 (C.D. Cal. 2013). Further, "[w]hen the complaint seeks a judgment relating to a non-

6

compete clause, to determine the value of enforcing the non-compete clause from the previous employer's point of view, courts will look to the profits earned on business generated by the employee during the period immediately preceding termination." *Meyer v. Howmedica Osteonics Corp.*, 2015 WL 728631, at 4 (S.D. Cal. Feb. 19, 2015). In addition, "[c]ourts have also examined the revenues generated by an employee and the revenues lost by the employer in determining whether the jurisdictional minimum has been met." *Mahoney v. Depuy Orthopaedics, Inc., No.*, 2007 WL 3341389, at 4 (E.D. Cal. Nov. 8, 2007).

Thus, Defendant argues that there are two ways in which the amount of controversy is calculated. The first way is by using the gross revenue, $136,600.60, paid to Defendant by Plaintiffs, which came during the one- year period immediately preceding the Franchise Agreement's expiration. (Def.'s Opp'n. at 8). This amount was calculated by taking the amount of $68,300.30, fees paid to Defendant by Plaintiffs, and multiplying it by two in order to account for the two year non-competition period. *Id.* at 8. Also included in this amount is the cost of $8,286, which Defendant paid per year to support one territory. (Decl. of Gina Martinez, "Martinez Decl.," Dkt. No. 19-2 ¶ 5). The second way is by using Defendant's expected net income generated by Plaintiffs' franchise fees over a two year period, which is $120,028.60. *Id.* at 8. Either calculation satisfies the amount in controversy requirement.

Plaintiffs contend that the amount in controversy should be calculated by adding "[2015 Income + Attorney's Fees + 2016 Income] [or] [ $49,736 + 3,651.34 + $20,199.22] [which equals] [$73,586.56] per Plaintiff," which does not meet the jurisdictional threshold. (Pls.' Mot. at 13). As set forth above, Plaintiffs share a common and undivided interest based on the terms of the Franchise Agreement and the claims asserted. *See* discussion *supra* Part III.B.i. Thus, based on Plaintiffs' own calculations— $73,586.56 per Plaintiff multiplied by two—equals $147,173.12, which exceeds the jurisdictional threshold.

Accordingly, the amount in controversy requirement is satisfied.

### iii. Defendant's Objections to Plaintiffs' Reply

#### c. Tax Returns

Defendant objects to the submission of Plaintiffs' 2011 and 2012 tax returns in support of

the reply brief on the grounds that it is both untimely and the profit and loss revealed is irrelevant. (Def.'s Obj. at 1-2; Tax Returns, Decl. of John Han ISO Pl.'s Reply, Dkt. No. 20-1, Exs. A & B.)

First, Defendant objects on the grounds that the evidence does not rebut evidence provided in the opposition, but rather offers new evidence to support Plaintiffs' argument that the amount in controversy is less than $75,000.00. (Def.'s Obj. at 2.) The Court agrees.

Second, Defendant objects on the grounds that any profit and loss based on 2011 and 2012 tax returns are not relevant to determining the amount in controversy, as they are far too remote in time to determine lost profits. *See* discussion *supra* Part III.B.ii. Again, the Court agrees.

Accordingly, Defendant's objection to Plaintiffs' 2011 and 2012 tax returns is sustained.

### d. 2016 Net Income

Defendant also objects to Paragraph 4 of the Han declaration, which states that Veris Eastbay had a net income of $35,348.63 during the first seven months of 2016 on the grounds that the statement lacks foundation. (Def.'s Obj. at 3.) Indeed, Han does not provide any factual basis to conclude he has personal knowledge of Veris's earning.

Accordingly, Defendant's objection is sustained.

## IV. CONCLUSION

In light of the foregoing, the Court DENIES Plaintiffs' motion to remand.

IT IS SO ORDERED.

Dated: October 5, 2016

KANDIS A. WESTMORE
United States Magistrate Judge