UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SYNERGY HOMECARE FRANCHISING, LLC, <br><br> Defendant. | Case No. 16-cv-03759-KAW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND COMPEL ARBITRATION; ORDER STAYING CASE** <br><br> Re: Dkt. No. 8 |

On July 12, 2016, Defendant Synergy Homecare Franchising, LLC filed a motion to dismiss the complaint and compel arbitration pursuant to the arbitration provisions contained in the parties' Franchise Agreement. (Def.'s Mot., Dkt. No. 8.)

On December 1, 2016, the Court held a hearing. For the reasons set forth below, the Court finds the arbitration agreement enforceable and GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss and compel arbitration, and STAYS the action pending the conclusion of arbitration.

## I.    BACKGROUND

On June 3, 2016, Plaintiffs John Han, Alice Lai-Bitker, and Veris Eastbay Homecare, Inc. filed a suit for declaratory relief on a written contract against Defendant Synergy Homecare Franchising, LLC. Plaintiffs seek declarations that paragraphs 7.4, 7.5, 7.6, 17.2, and 21.2 of the Franchise Agreement are "invalid, and/or void, and/or unenforceable." (Compl., Dkt. No. 1-1 at 12-13). Plaintiffs also seek a declaration that "client and caregiver information is trade secret information of Plaintiff[s] and should be stricken from the definition of Confidential Information as defined in the Franchise Agreement." (Compl. at 12). Finally, Plaintiffs seek a declaration that the Franchise Agreement "is invalid, and/or void and/or unenforceable in its entirety" and seek

recovery of their attorney's fees and costs. (Compl. at 13.)

In June 2011, Plaintiff Han entered into the Franchise Agreement with Defendant, which included an arbitration provision, which provided that:

> Except for controversies or claims relating to the ownership of any of Franchisor's Marks, the unauthorized use or disclosure of Franchisor's Confidential Information, covenants against competition, money due on contracts, or claims arising from or related to termination of this Agreement for violations of health or safety regulations, all disputes arising out of or relating to this Agreement or to any other agreements between the parties, or with regard to interpretation, formation or breach of this or any other agreement between the parties, will be settled by binding arbitration conducted in Maricopa County, Arizona, in accordance with the Commercial Arbitration Rules of the America Arbitration Association then in effect.

(Franchise Agreement, Dkt. No. 1-1 § 23.7.)  Additionally, "the decision of the arbitrator will be final and binding upon the parties." *Id.*  In 2013, Plaintiff Lai-Bitker was brought on as a principal of the franchise entity—Veris Eastbay Homecare, Inc.—in which she agreed to assume and perform all duties and obligations under the Franchise Agreement. (Compl. ¶ 1; Assignment and Assumption Agreement, Compl., Ex. B, Dkt. No. 1-1 at 79-81.)

On July 5, 2016, Defendant removed the case to federal court.  On July 12, 2016, Defendant filed a motion to dismiss the complaint and compel arbitration. (Def.'s Mot., Dkt. No. 8.)  On July 26, 2016, Plaintiffs filed an opposition. (Pls.' Opp'n, Dkt. No. 11.)  On August 2, 2016, Defendant filed a reply. (Def.'s Reply, Dkt. No. 12.)

On September 7, 2016, the Ninth Circuit issued its opinion in *Mohamed v. Uber Techs., Inc.,* 836 F.3d 1102, and the undersigned ordered the parties to submit supplemental briefs addressing which claims should be sent to the arbitrator to determine arbitrability in light of *Mohamed*. (Dkt. No. 31.)  On October 28, 2016, Defendant filed its supplemental brief. (Def.'s Suppl. Br., Dkt. No. 34.)  On November 4, 2016, Plaintiff filed their supplemental brief. (Pls.' Suppl. Br., Dkt. No. 35.)

## II.    LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. "Once the court has determined that an arbitration

United States District Court
Northern District of California

agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

Generally, in deciding whether a dispute is subject to an arbitration agreement, the Court must determine two "gateway issues": "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As such, the Court's role "is limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991).

Notwithstanding, these gateway issues can be expressly delegated to the arbitrator where "the parties clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); see also *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so"). Indeed, the Ninth Circuit held that the "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). While *Brennan* involved "sophisticated parties," the Ninth Circuit explicitly stated that the holding should not be "interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Id.*

"There are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability." *Galen v. Redfin Corp.*, No. 14-CV-05229-TEH, 2015 WL 7734137, at *5 (N.D. Cal. Dec. 1, 2015) (internal citations omitted) (quoting *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014)); *see also Rent-A-Center,*

1 *W., Inc. v. Jackson*, 561 U.S. 63, 68, 70 n.1 (2010).

2   "[T]he party resisting arbitration bears the burden of proving that the claims at issue are

3 unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)

4 (internal citations omitted).  A court must defer to arbitration "unless it may be said with positive

5 assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

6 dispute," and "doubts should be resolved in favor of coverage." *AT&T Tech., Inc. v. Commc'ns*

7 *Workers of Am.*, 475 U.S. 643, 650 (1986).

8   If the court is satisfied "that the making of the arbitration agreement or the failure to

9 comply with the agreement is not in issue, the court shall make an order directing the parties to

10 proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.  The action

11 should be stayed "until such arbitration has been had in accordance with the terms of the

12 agreement . . . ." 9 U.S.C. § 3.  In the alternative, due to the court's inherent right to control its

13 docket, the court may dismiss the claims subject to mandatory arbitration pursuant to Federal Rule

14 of Civil Procedure 12(b)(6). *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053,

15 1060 (9th Cir. 2004) (citing *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723–725 (9th Cir.

16 2000)).

17       **III.  DISCUSSION**

18   In the instant motion, Defendant seeks to compel arbitration consistent with the Franchise

19 Agreement, while Plaintiffs argue that the arbitration clause excludes the current disputes from

20 arbitration.

21   **A.  Delegation provision and threshold issue of artbitrability**

22   A threshold issue is whether the Court should even decide the question of arbitrability, or,

23 rather, whether the Franchise Agreement delegated the arbitrability determination to the arbitrator.

24 "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties

25 agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T v. Commc'ns Workers*,

26 475 U.S. at 649. "In other words, there is a presumption that courts will decide which issues are

27 arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of

28 arbitrability." *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

United States District Court
Northern District of California

"There are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability." *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014); *see also Rent-A-Center,* 561 U.S. at 68, 70 n.1 (2010); *Galen v. Redfin Corp.*, No. 14-CV-05229-TEH, 2015 WL 7734137, at *5 (N.D. Cal. Dec. 1, 2015).

### i.    Incorporation of AAA rules post-*Mohamed*

Defendant argues that the delegation provision requires that any dispute pertaining to arbitrability be submitted to the arbitrator. (Def.'s Mot. at 12.)  Generally, the incorporation of the AAA rules is "clear and unmistakable" evidence of the parties' intent to submit the arbitrability dispute to arbitration. *Brennan*, 796 F.3d at 1131.  The American Arbitration Association recommends the following standard delegation language for inclusion in contracts:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

AM. ARBITRATION ASSOC., A GUIDE TO COMMERCIAL MEDIATION AND ARBITRATION FOR BUSINESS PEOPLE 16 (2013), https://www.adr.org/aaa/ShowPDF?doc=ADRSTAGE2019455.  The recommended language would delegate arbitrability of all claims and controversies to arbitration. *See id.*

At the hearing, Defendant argued that the "carve out" exclusions[1] apply only to the arbitration provision.  Thus, under *Oracle* and *Brennan*, Defendant contends that the delegation provision clearly and unmistakably delegated arbitrability to the arbitrator.

The Court will, therefore, undertake an examination of the provisions in those cases to determine whether they are equivalent.  In *Oracle*, the arbitration clause provided:

> Any dispute arising out of or relating to this License shall be finally settled by arbitration as set out herein, except that either party may

---

[1] References referring to the "carve out" refers to the agreement language that "[e]xcept for controversies or claims relating to the ownership of any of Franchisor's Marks, the unauthorized use or disclosure of Franchisor's Confidential Information, covenants against competition, money due on contracts, or claims arising from or related to termination of this Agreement for violations of health or safety regulations. . . ." (Franchise Agreement § 23.7.)

> bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights or with respect to Your compliance with the TCK license. Arbitration shall be administered: (i) by the American Arbitration Association (AAA), (ii) in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL) (the "Rules") in effect at the time of arbitration as modified herein; and (iii) the arbitrator will apply the substantive laws of California and United States. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction to enforce such award.

*Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1071 (9th Cir. 2013). The first sentence was the arbitration provision, which included the carve out for intellectual property and compliance with the TCK license. The following sentence, which begins "Arbitration shall be administered. . ." is the delegation clause. The Ninth Circuit found that the parties had clearly and unmistakably delegated the determination of whether a claim relates to intellectual property or compliance with the license by incorporating the UNCITRAL rules. *Oracle*, 724 F.3d at 1076.

Similarly, in *Brennan*, the mandatory arbitration provision in the employment contract provided:

> Except with respect to any claim for equitable relief ... any controversy or claim arising out of this [Employment] Agreement or [Brennan's] employment with the Bank or the termination thereof ... shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association.

*Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015). Brennan, however, "argued that his 'causes of action should be resolved by litigation, rather than arbitration,' because the Arbitration Clause was both procedurally and substantively unconscionable, and therefore unenforceable." *Id.* at 1128. The Ninth Circuit disagreed, and found that the unconscionability issue must be decided by the arbitrator, because the incorporation of the AAA rules constituted clear and unmistakable evidence of the parties' intent to submit the arbitrability dispute to the arbitrator. *Id.* at 1131.

Most recently, in *Mohamed*, the delegation provision provided:

> Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.

> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.

*Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102, 1108 (9th Cir. 2016).  The 2013 Agreement carved out an exception from the general delegation provision: "Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator." *Id.* at 1108.  The Ninth Circuit concluded that the specific carve out language served to "clearly and unmistakably delegate[] the question of arbitrability to the arbitrator for all claims except challenges to the class, collective, and representative action waivers." *Id.* at 1110.

Here, the delegation provision states that binding arbitration will be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect," except for certain disputes that are excluded from arbitration. (Franchise Agreement § 23.7.)  Thus, at first blush, it is unclear whether the carve out applies to either the delegation or arbitration provisions or both.  Therefore, the Court finds that the delegation of arbitrability does not appear to be clear and unmistakable.

### ii.   Determining arbitrability by examining language

To determine whether the delegation of arbitrability is clear and unmistakable, the Court is tasked with examining the language itself.

#### a.   Grammar and sentence structure

Punctuation, including the use of commas, is significant and affects meaning in written contracts. *In re Williams' Estate*, 113 Cal. App. 2d 895, 897–98, 249 P.2d 348, 349 (1952)(While not always controlling, "[o]rdinary rules for punctuation and capitalization are important".); *In re Jones' Estate*, 55 Cal. 2d 531, 536, 360 P.2d 70, 73 (1961)("[P]unctuation may properly be referred to as an aid in ascertaining . . . intent.")  For example, the common internet meme "Commas Save Lives," illustrates the difference between "Let's eat Grandma" and "Let's eat, Grandma." *See* Pinterest, "Meme-tastic," Commas Save Lives meme, https://www.pinterest.com/sitelab/meme-tastic/ (last viewed Dec. 1, 2016).  The former involves

United States District Court
Northern District of California

1    cannibalism, while the latter involves sharing a meal with Grandma. *See ids.* This is equally true

2    in the legal context, including the use of the Oxford comma in testamentary documents. For

3    example, a bequest to three children phrased as "to Alice, Bill and Claire in equal shares" could

4    potentially result in a distribution of 50% to Alice and the remaining 50% to Bill and Claire to

5    share. However, a bequest "to Alice, Bill, and Claire in equal shares" would clearly result in each

6    beneficiary receiving 1/3 of the estate.

7        The use of a comma instead of a semicolon is also significant. *See In re Jones' Estate*, 55

8    Cal. 2d 531, 536, 360 P.2d 70, 73 (1961). "A semicolon is used in a 'coordinating function

9    between major sentence elements, separating them with more distinctness than comma.'" *Id.*

10    (quoting Webster's New International Dictionary, 2d. Edition, page 2274.) In *In re Jones' Estate,*

11    the Court found that it was "significant that after the description of each of the first three parcels

12    the scrivener inserted a semicolon, whereas only a comma separates the description of the fourth

13    parcel and the clause limiting the gift to a life estate." *Id.*

14        Here, the exclusions, arbitration, forum selection, and delegation provisions are all

15    contained in a single sentence, separated only by commas.

> Except for controversies or claims relating to the ownership of any of Franchisor's Marks, the unauthorized use or disclosure of Franchisor's Confidential Information, covenants against competition, money due on contracts, or claims arising from or related to termination of this Agreement for violations of health or safety regulations, all disputes arising out of or relating to this Agreement or to any other agreements between the parties, or with regard to interpretation, formation or breach of this or any other agreement between the parties, will be settled by binding arbitration conducted in Maricopa County, Arizona, in accordance with the Commercial Arbitration Rules of the America Arbitration Association then in effect.

22    (Franchise Agreement § 23.7.) The exclusions, or "carve outs," are "[e]xcept for controversies or

23    claims relating to the ownership of any of Franchisor's Marks, the unauthorized use or disclosure

24    of Franchisor's Confidential Information, covenants against competition, money due on contracts,

25    or claims arising from or related to termination of this Agreement for violations of health or safety

26    regulations. . . ." *Id.* The arbitration and forum selection provisions follow: "all disputes arising

27    out of or relating to this Agreement or to any other agreements between the parties, or with regard

28    to interpretation, formation or breach of this or any other agreement between the parties, will be

United States District Court
Northern District of California

1    settled by binding arbitration conducted in Maricopa County, Arizona." *Id.* Lastly, the delegation

2    provision is "in accordance with the Commercial Arbitration Rules of the America Arbitration

3    Association then in effect." *Id.*  The issue then is whether the carve out applies only to the

4    arbitration provision or whether the carve outs apply to both the arbitration provision and the

5    delegation provision.  If it is the latter, then the arbitrability issue is not clearly and unmistakably

6    delegated to the arbitrator under *Oracle*, *Brennan*, and *Mohamed*.  Defendant contends that this

7    provision is like the one in *Oracle*. The Court disagrees.  In *Oracle,* the parties clearly

8    distinguished between the arbitration provision and the delegation provision by using separate

9    sentences. *Oracle*, 724 F.3d at 1071, 1076.

10        In contrast, here, the parties use a single sentence, such that the carve outs appear to apply

11    to both the arbitration and delegation provisions.  Indeed, if the carve outs were moved to the end

12    of the sentence, and still separated by a comma, the logical interpretation would be that the parties

13    intended to apply the carve outs to both provisions:

> All disputes arising out of or relating to this Agreement or to any
> other agreements between the parties, or with regard to
> interpretation, formation or breach of this or any other agreement
> between the parties, will be settled by binding arbitration conducted
> in Maricopa County, Arizona, in accordance with the Commercial
> Arbitration Rules of the America Arbitration Association then in
> effect, except for controversies or claims relating to the ownership
> of any of Franchisor's Marks, the unauthorized use or disclosure of
> Franchisor's Confidential Information, covenants against
> competition, money due on contracts, or claims arising from or
> related to termination of this Agreement for violations of health or
> safety regulations.

20    Furthermore, had the parties intended that the carve outs apply only to the arbitration provision,

21    they could have drafted the provisions as separate sentences, as follows (altered language is

22    bolded):

> Except for controversies or claims relating to the ownership of any
> of Franchisor's Marks, the unauthorized use or disclosure of
> Franchisor's Confidential Information, covenants against
> competition, money due on contracts, or claims arising from or
> related to termination of this Agreement for violations of health or
> safety regulations, all disputes arising out of or relating to this
> Agreement or to any other agreements between the parties, or with
> regard to interpretation, formation or breach of this or any other
> agreement between the parties, will be settled by binding arbitration
> conducted in Maricopa County, Arizona**. Arbitration will be
> administered** in accordance with the Commercial Arbitration Rules
> of the America Arbitration Association then in effect.

United States District Court
Northern District of California

Under *Oracle* and its progeny, this would have constituted a clear and unmistakable delegation of the gateway issue of arbitrability to the arbitrator. 724 F.3d 1076.  The use of a semicolon, rather than a period, would have accomplished the same result.  Here, however, the parties opted to use commas, which do not clearly delegate the gateway issue of arbitrability to arbitration.  While this may be due to poor drafting, the language implies that the parties did not intend to delegate arbitrability of the excluded claims, particularly after *Mohamed*.  Accordingly, the Court finds that the carve outs apply to both the arbitration and delegation provisions.

### b.  "Relating to" language requires that the exclusions be broadly construed

The arbitration provision states: "Except for controversies or claims relating to . . . covenants against competition . . . ." (Franchise Agreement § 23.7.)  Synergy argues that the carve out for covenants against competition was only intended to permit litigation of claimed breaches. (Def.'s Suppl. Br. at 4.)  The exclusionary language, however, does not include such a limitation. Synergy did include "breach" in the latter part of the provision, which provides that, except for the excluded controversies or claims, "all disputes arising out of or relating to this Agreement or to any other agreements between the parties, or with regard to interpretation, formation or breach of this or any other agreement between the parties, will be settled by binding arbitration . . . ." (Franchise Agreement § 23.7.)

"The words of a contract are to be understood in their ordinary and popular sense, rather than their strict legal meaning unless used by the parties in a technical sense." *Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999, 1004 (Ct. App. 1975).  The ordinary meaning of "relating to" is broad. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)(citations omitted).  In fact, "the phrase 'arising out of or relating to' [is] the standard language recommended by the American Arbitration Association." *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1327 (Ct. App. 2007).

Here, the language is very broad.  "When the contractual language is clear, there is no need to consider extrinsic evidence of the parties' intentions; the clear language of the agreement governs." *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1322 (2007)(citing *TRB Investments, Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006)).  The arbitration

United States District Court
Northern District of California

1   provision's use of the words "relating to" requires that the Court interpret the exclusions broadly.

2   This interpretation is bolstered by the use of the term "breach" later in the provision.  If the intent

3   of the parties was to only carve out breaches of the covenants against competition, the

4   exclusionary language should have reflected that.  Synergy's claim that it intends to introduce

5   extrinsic evidence that the exclusions are narrower than drafted is, therefore, unavailing. (*See*

6   Def.'s Suppl. Br. at 4.)  This interpretation is reinforced by the fact that Synergy narrowed the

7   scope of other exclusions, including "claims arising from or related to termination of this

8   Agreement for violations of health and safety regulations". (Franchise Agreement § 23.7.)

9   Obviously, some of the claims related to the termination of the Agreement would be subject to

10   arbitration. *Id.*

11          Thus, as the parties' intent is to be inferred from the written provisions of the contract, the

12   Court finds that "relating to" must be broadly construed to include claims pertaining to the validity

13   of the covenants against competition. *See TRB Investments*, 40 Cal. 4th at 27.

14          In light of the foregoing, the Franchise Agreement does not clearly and unmistakably

15   delegate arbitrability to arbitration.  Rather, it delegates only those disputes that were not clearly

16   excluded from the arbitration provision.  Therefore, the Court must determine whether the

17   arbitration provision is valid and whether the disputes at issue are subject to arbitration.

18          **B.      Existence of a Valid Arbitration Agreement**

19          In deciding whether to compel arbitration, the Court must determine "(1) whether a valid

20   agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

21   issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quotation omitted).

22   "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the

23   arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

24   207 F.3d 1126, 1130 (9th Cir. 2000).

25          In making this determination, the Court "should apply ordinary state-law principles that

26   govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 11656, 1170 (9th

27   Cir. 2003). Under California law, a valid contract requires: (1) parties capable of contracting; (2)

28   mutual consent; (3) a lawful object; and (4) sufficient cause or consideration. Cal. Civ. Code §

1550.  Plaintiff does not argue that a contract does not exist, but rather that it is unenforceable.

An arbitration agreement cannot be invalidated for unconscionability absent a showing of both procedural and substantive unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The procedural element focuses on oppression or surprise due to unequal bargaining power; the substantive element focuses on overly harsh or one-sided results. *Kilgore v. Keybank, Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (quoting *Armendariz*, 24 Cal. 4th at 89, 99). The party challenging the arbitration agreement bears the burden of establishing unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 247 (2012).

### i.    Whether the Arbitration Provision Encompasses the Disputes at Issue

Plaintiffs contend that none of the claims are arbitable. (Pl.'s Suppl. Br. at 4.)  Defendant argues that the issue of arbitrability must be resolved by the arbitrator rather than the court. (Def.'s Suppl. Br. at 1.)  The court is "required to enforce [arbitration] agreements 'according to their terms' and, in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability, let an arbitrator determine arbitrability **as to all but the claims specifically exempted** by the [] Agreement." *Mohamed*, 836 F.3d at 1110 (emphasis added) (citing *Rent-A-Ctr.,* 561 U.S. at 67).  As discussed above, it is improper for the district court to allow the arbitrator to determine the arbitrability of those causes of action that are explicitly exempted by the agreement. *Mohamed*, 836 F.3d at 1110; *see* discussion *supra* Part III.A.

Here, while the FAA generally governs, the Franchise Agreement explicitly exempts from arbitration any claims relating "to the ownership of any of Franchisor's Marks, the unauthorized use or disclosure of Franchisor's Confidential Information, covenants against competition, money due on contracts, or claims arising from or related to termination of this Agreement for violations of health or safety regulations." (Franchise Agreement § 23.7.)  Thus, the arbitrator is only delegated those claims that are not clearly excluded.  The first, third, fourth, and fifth causes of action concern the validity of the terms restricting competition, and, therefore, are explicitly excluded from arbitration. *See id.*  The second cause of action concerning Plaintiffs' use of their own "confidential information," rather than Defendant Franchisor's information, is not excluded.

Neither is the sixth cause of action for indemnification nor the seventh cause of action for invalidation of the entire Franchise Agreement.  Accordingly, the second, sixth, and seventh causes of action  must be resolved by binding arbitration.

### ii.   Whether a Valid Agreement to Arbitrate Exists

Plaintiffs contend that the Agreement is not valid and enforceable on the grounds that it is unconscionable under California law. (Pls.' Opp'n at 11.)

"Under the FAA savings clause, state law that arose to govern issues concerning the validity, revocability, and enforceability of contracts generally remains applicable to arbitration agreements." *Kilgore,* 718 F.3d at 1058 (quotation omitted). Thus, under California law, an arbitration agreement may only be invalidated for unconscionability if it is both procedurally and substantively unconscionable. *Id.* (citing *Armendariz,* 24 Cal. 4th at 114). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114. "[T]he party opposing arbitration has the burden of proving the arbitration provision is unconscionable." *Higgins v. Superior Court*, 140 Cal.App.4th 1238, 1249 (2006) (quotation omitted).

### a.   Procedural Unconscionability

"Procedural unconscionability focuses on the factors of surprise and oppression." *Kilgore*, 718 F.3d at 1059 (quotation omitted).  Plaintiffs claim that the Franchise Agreement is procedurally unconscionable for four reasons: (1) it was an adhesion contract, such that Plaintiffs did not have an opportunity to negotiate its terms; (2) Plaintiffs were unaware that arbitration provisions were contained in the Franchise Agreement; (3) Defendant had superior bargaining power; and (4) Defendant was in complete control of the franchise agreement, including the arbitration and delegation provisions. (Pls.' Opp'n at 12.)

### 1.   Whether it was a contract of adhesion rendering it unconscionable.

Plaintiffs contend that the Franchise Agreement in unconscionable, because they could not negotiate the terms. (Pls.' Opp'n at 11-12.)  "California courts have long recognized that franchise agreements have some characteristics of contracts of adhesion because of the 'vastly superior

United States District Court
Northern District of California

1  bargaining strength' of the franchisor." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1282 (9th

2  Cir. 2006).  Notwithstanding, a franchise agreement is not per se unconscionable. *Indep. Ass'n of*

3  *Mailbox Ctr. Owners, Inc. v. Superior Court*, 133 Cal. App. 4th 396, 407 (2005).  If that were true,

4  franchise agreements would never be enforceable and would not exist.  Thus, the "bald assertion

5  of inequality in bargaining power is an insufficient basis on which to find a contract provision

6  unenforceable." *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 892 (9th Cir. 2001). Accordingly,

7  the Franchise Agreement is not unconscionable merely because Defendant had superior bargaining

8  power.

9

10  > 2.  Whether Plaintiffs were unaware that arbitration provision was contained
   >     in the Franchise Agreement.

11  Plaintiffs argue that they were unaware that the Franchise Agreement contained the

12  arbitration provision. (Pls.' Opp'n at 12.)  As an initial matter, the fact that Lai-Bitker was

13  unaware is irrelevant, because she was not originally a party to the Franchise Agreement at the

14  time of signing, and the Assignment Agreement she executed expressly stated that she would

15  perform in accordance with the Franchise Agreement. (*See* Compl. ¶ 1; Assignment and

16  Assumption Agreement at 1.)

17  Second, Plaintiffs' claim that the arbitration provision was "not set apart from the rest of

18  the agreement by font size, font type, font color or capitalization" is unavailing. (Pls.' Opp'n at

19  12.)  As an initial matter, Synergy "was under no obligation to highlight the arbitration clause of

20  its contract, nor was it required to specifically call that clause to [Plaintiffs'] attention." *Sanchez v.*

21  *Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015).  Notwithstanding, the arbitration

22  provisions were included under the section titled "DISPUTE RESOLUTION," which was bolded,

23  underlined, and in all capital letters, and the subsection was titled "Arbitration," which was both

24  bolded and underlined. (Franchise Agreement §§ 23, 23.7) (emphasis in original.)  Thus, the

25  arbitration provision was clearly labeled and easily identifiable. Additionally, the Franchise

26  Agreement included an addendum for franchisees in California, which amended the Franchise

27  Agreement, and explicitly stated that "Section 23.7 of the Franchise Agreement requires binding

28  arbitration." (Addendum, Dkt. No. 1-1 at 78-79.)  Han signed both the Franchise Agreement and

United States District Court
Northern District of California

14

the two-page Addendum. *Id.* at 2.  Plaintiffs are not entitled to have all of the details of the Franchise Agreement explained to them.  Perhaps that is why the Addendum advised prospective franchises to seek legal advice.  Accordingly, the inclusion of the arbitration provision in the Franchise Agreement is not procedurally unconscionable.

          3.   Whether Defendant had superior bargaining power.

The parties do not dispute that Defendant, as the franchisor, had superior bargaining power.  Notwithstanding, as set forth above, this does not render the Franchise Agreement unconscionable. *See* discussion *supra* Part III.B.ii.a.1.

          4.   Whether Defendant was in complete control of the Franchise Agreement.

Plaintiffs reiterate the same failing argument without any facts beyond that Defendant was the franchisor and drafted the Franchise Agreement.

To the extent that Plaintiffs object on the grounds that they were never furnished with a copy of the AAA rules of arbitration, this is not facially unconscionable. "The failure to attach a copy of arbitration rules could be a factor supporting a finding of procedural unconscionability where the failure would result in surprise to the party opposing arbitration." *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 690 (2014).  Here, however, the Franchise Agreement clearly provides that arbitration would take place in Maricopa County, Arizona and be conducted in accordance with the AAA's "Commercial Arbitration Rules." (Franchise Agreement § 23.7.) Furthermore, the arbitration rules are available on the internet, and the Court notes that, while not lawyers, Plaintiffs are sophisticated business people. *Lane,* 224 Cal. App. 4th at 691; *see also Carbajal v. CWPSC*, Inc., 245 Cal. App. 4th 227, 245 (2016)(college student was not sophisticated).  Indeed, Lai-Bitker served on the Alameda County Board of Supervisors and Han purportedly received a Bachelor of Arts degree in legal studies from U.C. Berkeley, and who was the sole principal of Veris prior to Lai Bitker's involvement with the corporation. (*See* Def.'s Reply at 5.)  Therefore, this is not a situation where the failure to attach the arbitration rules would have resulted in surprise.  At most, this could amount to some minimal procedural unconscionability.

Accordingly, the Franchise Agreement is, at most, minimally procedurally unconscionable.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

b.  Substantive Unconscionability

Plaintiff contends that the arbitration provision is substantively unconscionable, because (1) it lacks mutuality, and (2) the forum selection clause unfairly favors Defendant. (Pls.' Opp'n at 13-15.) An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided" results. *Armendariz*, 24 Cal. 4th at 114.  Plaintiffs must prove a "high degree" of substantive unconscionability to avoid arbitration because the Franchise Agreement was, at most, minimally procedurally unconscionable. *See Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 585 (2007).

1.  Mutuality

Plaintiffs argue that the exclusion of claims related to Defendant's "confidential information" and intellectual property makes the arbitration provision substantively unconscionable. (Pls.' Opp'n at 13-14.)  Defendant contends that similar provisions were not so "one-sided as to be unconscionable." (Def.'s Reply at 11.)  Here, the arbitration provision excludes claims relating to the ownership of any of Franchisor's Marks and the unauthorized use or disclosure of Franchisor's Confidential Information. (Franchise Agreement § 23.7.)

The California Supreme Court has found that a one-sided contract is not necessarily unconscionable. "[A] contract can provide for 'a margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1250 (2016)(quoting *Armendariz*, 24 Cal. 4th at 117).  In *Baltazar*, the California Supreme Court did not find that the arbitration agreement was unduly harsh or one-sided when it called "for the protection of an employer's confidential information without similarly calling for the protection of the confidential information of employees." 62 Cal. 4th at 1250; *see also Tompkins v. 23andMe, Inc.*, No. 14-16405, 2016 WL 6072192, at *10 (9th Cir. Oct. 13, 2016).  Instead, the California Supreme Court held that the basis for the extra measure of protection was a legitimate commercial need to protect Forever 21's trade secrets and proprietary and confidential information from disclosure. *Baltazar*, 62 Cal. 4th at 1250.  Here, Defendant similarly argues that the exclusion of claims relating to its intellectual property is necessary to protect its trademarks, and that the

16

business reality of franchising easily justifies the exclusion. (*See* Def.'s Reply at 11.)  The Court

agrees given that much of the franchisor's value in franchising is its confidential information.

### 2.   Forum Selection Clause

Plaintiffs argue that the forum selection clause selecting Maricopa County, Arizona is

substantively unconscionable, because Plaintiffs are located in Alameda County, California and

the Franchise Agreement limited Plaintiffs to a small portion of California. (Pls.' Opp'n at 15.)

The fact that Arizona is not convenient does not render the selection of the Arizona forum

unconscionable. *Tompkins*, 2016 WL 6072192, at *9.  First, Defendant's headquarters is located in

Arizona, so it has a sufficient nexus to the contract. *See id.* (citing *Polimaster Ltd. v. RAE Sys.,*

*Inc.*, 623 F.3d 832, 837 (9th Cir. 2010)). Second, the forum selection clause provided notice to the

franchisees that they were agreeing to arbitrate in Arizona. *See Intershop Commc'ns v. Superior*

*Court*, 104 Cal. App. 4th 191, 201–02 (2002) ("A forum selection clause within an adhesion

contract will be enforced 'as long as the clause provided adequate notice to the [party] that he was

agreeing to the jurisdiction cited in the contract.'")  Here, Plaintiffs have not met their burden of

proving that the forum selection clause is unreasonable.

In light of the foregoing, Plaintiffs have not met their burden of showing that the Franchise

Agreement was unconscionable.

### iii.   The arbitration provision is not otherwise unenforceable

Alternatively, Plaintiffs argue that the arbitration and delegation provisions are not

enforceable on the grounds that there was no meeting of the minds as to the forum selection clause

and the costs of arbitration. (Pls.' Opp'n at 16.)  Plaintiffs cite *Laxmi Investments, LLC v. Golf*

*USA*, 193 F.3d 1095, 1097 (9th Cir. 1999), in which the Ninth Circuit found that there was no

meeting of the minds as to forum selection when the language in the offering circular stated that

"the out-of-state forum provision 'may not be enforceable under California law'" and that

California law would control if it conflicted with the franchise agreement. (Pls.' Opp'n at 16.)

Here, the Addendum, amended Section 23.7 as follows:

> Section 23.7 of the Franchise Agreement requires binding
> arbitration. The arbitration will occur at the forum indicated in
> Section 23.7, with the costs to be borne by the non-prevailing party.

United States District Court
Northern District of California

17

1
2
3

> Prospective franchisees are encouraged to consult legal counsel to determine the applicability of California and federal laws (such as Business and Professions Code Section 20040.5, Code of Civil Procedure Section 1281, and the Federal Arbitration Act) to any provision of the Franchise Agreement restricting venue to a forum outside of the State of California.

(Addendum at 2.)  Unlike the agreement in *Laxmi*, here, prospective franchisees are again advised that arbitration will occur in the forum indicated in § 23.7 of the Franchise Agreement, and are then advised to consult legal counsel regarding the provision restricting venue to a forum outside of the state. *Cf. Laxmi*, 193 F.3d at 1097.  Despite Plaintiffs' protestations to the contrary, this language is not functionally equivalent to *Laxmi*. (*See* Pls.' Opp'n at 17.) Instead, it is clear that the arbitration will not occur in California, and the Franchise Agreement identifies Maricopa County, Arizona as the selected forum. (Franchise Agreement § 23.7.)  Moreover, as Defendant acknowledges, the Ninth Circuit has since held that the FAA preempts the section of the California Franchise Relations Act that voids a franchise agreement's requirement that the parties arbitrate out-of-state.  Also, unlike *Laxmi*, the Franchise Agreement choice of law provision requires the application of Arizona law, but only to those disputes not subject to binding arbitration, as the FAA otherwise governs. (Franchise Agreement § 23.1.)

To the extent that Plaintiffs argue that Lai-Bitker's Assignment, which was executed in 2013, is a "further step away from a meeting of the minds with respect to the location of arbitration," the Court is unconvinced. (*See* Pls.' Opp'n at 17.)  The Assignment Agreement was not an opportunity for Lai-Bitker to negotiate any of the terms of the Franchise Agreement, which had already been executed.  Instead, Lai-Bitker's execution of the Assignment and Assumption Agreement was an affirmative decision to be bound by all of the terms of the Franchise Agreement.[2]

For the reasons set forth above, Plaintiffs have failed to carry their burden of showing that the Franchise Agreement is unenforceable.  Thus, the Franchise Agreement is valid and

_____

[2] Any claims by Lai-Bitker that she did not have any opportunity to negotiate any agreements or terms of the Franchise Agreement, therefore, have no bearing on the unconscionability analysis or the meeting of the minds regarding the arbitration provision or the validity of the Franchise Agreement itself. (*See* Decl. of Alice Lai-Bitker, "Lai-Bitker Decl.," Dkt. No. 11-2 ¶¶ 8-23.) In fact, Lai-Bitker had an opportunity to reject the Franchise Agreement by not signing the Assignment Agreement in 2013. (*Cf.* Lai-Bitker Decl. ¶ 21.)

United States District Court
Northern District of California

1   enforceable, and those claims not clearly exempt are subject to arbitration.

2       **C.**     **Stay**

3       Defendant moved for dismissal on the grounds that the entire action is subject to

4   arbitration.  For the reasons set forth above, the undersigned disagrees.  Plaintiffs have requested

5   that parallel proceedings occur should the court refer some of the claims to arbitration. (Pls.'

6   Suppl. Br. at 5.)  At the hearing, the Court asked the parties if they would be amenable to a stay in

7   the proceedings.  Defendant indicated that it would prefer a stay, while Plaintiffs indicated that

8   they wished to pursue parallel proceedings. Under the FAA:

9
10           If any suit or proceeding be brought in any of the courts of the
United States upon any issue referable to arbitration under an
agreement in writing for such arbitration, the court in which such
11   suit is pending, upon being satisfied that the issue involved in such
suit or proceeding is referable to arbitration under such an
agreement, shall on application of one of the parties stay the trial of
12   the action until such arbitration has been had in accordance with the
terms of the agreement, providing the applicant for the stay is not in
13   default in the proceeding with such arbitration.

14   9 U.S.C. § 3.  Here, the Court finds that the second, sixth, and seventh causes of action are

15   referable to arbitration pursuant to the Agreement.  Accordingly, this action is stayed pursuant to 9

16   U.S.C. § 3.

17                   **IV.**     **CONCLUSION**

18       In light of the foregoing, the Court GRANTS IN PART AND DENIES IN PART

19   Defendant's motion to dismiss and compel arbitration.  Specifically, the motion to compel

20   arbitration is granted as to the second, sixth, and seventh causes of action.  The motion is denied as

21   to the remaining causes of action.  The action is STAYED pending the conclusion of arbitration.

22       IT IS SO ORDERED.

23   Dated: February 2, 2017

24   _____
KANDIS A. WESTMORE
25   United States Magistrate Judge

26

27

28

United States District Court
Northern District of California

19